IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM SINE, Administrator of the
Estate of Regina Lou Sine, Decedent
    Plaintiff,

v.                                               Civil Action No. 1:14-cv-143

LOREN SHEREN, MD,
    Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Defendant Loren Sheren, M.D.'s ("Defendant") "Motion to Exclude Testimony of John H. Lecky, M.D.," filed on February 12, 2015. (Docket No. 16.) Plaintiff William Sine ("Plaintiff") filed a response on February 20, 2015. (Docket No. 17.) Defendant filed a reply on February 27, 2015. (Docket No. 18.) After receiving leave to do so, Plaintiff filed a surreply on March 4, 2015. (Docket No. 21.) On March 24, 2015, United States District Judge Irene M. Keeley referred this matter to the undersigned. (Docket No. 23.) On March 31, 2015, the parties appeared for a hearing on Defendant's motion.

### I.   Relevant Procedural History

On July 24, 2014, Plaintiff filed a Complaint, pursuant to West Virginia's Medical Professional Liability Act ("MPLA"), against Defendant in the Circuit Court for Marion County, West Virginia. (Docket No. 1-1.) In the Complaint, Plaintiff alleges as follows:

> On or about September 14, 2013, Plaintiff's decedent, Regina Lou Sine, was admitted to Fairmont General Hospital for treatment of severe and diffuse abdominal pain. Physicians and surgeons at Fairmont General Hospital diagnosed a gastro-intestinal perforation which required immediate surgery.
>
> At all relevant times herein, Defendant, Lorne Sheren, MD, was the anesthesiologist who provided anesthesia services for Plaintiff's decedent during her surgery. Following the successful surgery, Plaintiff's decedent remained under the direct care of the Defendant, Lorne Sheren, MD, and thereafter Defendant, Lorne Sheren, MD, negligently and recklessly deviated from accepted anesthesiological standards of

medical care by prematurely extubating Plaintiff's decedent who was in an unstable condition in the operating room. Medical records reflect that the patient was extubated in the operating room and thereafter transported to the Intensive Care Unit. Upon arrival in the Intensive Care Unit Plaintiff's decedent was visibly cyanotic, cold to the touch, pale, and appeared to be apneic. At all relevant times herein, Defendant, Lorne Sheren, MD, negligently and recklessly failed to properly monitor and control the decedent's respiratory status which proximately resulted in respiratory and cardiac arrest of Plaintiff's decedent, all of which led to her ultimate wrongful death on September 22, 2013. At all relevant times herein, Defendant, Lorne Sheren, MD, failed to exercise the proper degree of skill, care, and learning required of a reasonably prudent health care provider.

(Docket No. 1-1 at 5-6.) Defendant removed the matter to this Court on August 25, 2014. (Docket No. 1.) Defendant filed an Answer that same day. (Docket No. 3.) Plaintiff has designated John H. Lecky, M.D., as his expert witness for this matter.

## II. Contentions of the Parties

### A. Defendant's Motion

In his motion, Defendant raises the following claims:

1. Dr. Lecky is not competent or qualified to offer expert testimony regarding the care provided by Dr. Sheren on September 14, 2013; and

2. The potential for prejudice and/or confusion to the jury would outweigh the probative value of Dr. Lecky's opinions.

(Docket No. 16 at 9-12.)

### B. Plaintiff's Response

Plaintiff claims the following:

1. Defendant relies upon a statutory provision which he misinterprets and which the West Virginia Supreme Court has already disregarded as an encroachment on judicial function; and

2. Defendant takes a factual issue, i.e., weight and credibility of Dr. Lecky's opinions, and misconstrues it as a legal issue, which it is not.

(Docket No. 17 at 1.)

## C. Defendant's Reply

Defendant again claims that Dr. Lecky is not competent under the MPLA, and that even if he is competent, he is not qualified to testify as an expert witness because his "testimony would be speculative, conjectural, and unhelpful to the jury." (Docket No. 18 at 3.)

## D. Plaintiff's Surreply

Plaintiff argues that Legg v. Chopra, 286 F.3d 286 (6th Cir. 2002), and Milville Abington Mem. Hosp., 377 F. Supp. 2d 488 (E.D. Pa. 2005), both cited by Defendant, are "not even applicable" to the issue. (Docket No. 21 at 1.)

## III. Analysis

### A. Competency of Dr. Lecky

Defendant asserts that to be competent under the MPLA, Dr. Lecky "must be able to address, with reasonable medical probability, the applicable standard of care and any deviation therefrom *at the time of the medical injury.*" Defendant argues that Dr. Lecky is "not legally competent to offer such testimony due to his retirement from active clinical practice and teaching nearly ten (10) years prior to the medical injury at issue." (Docket No. 16 at 9.)

Federal Rule of Evidence 601 states:

Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.

Accordingly, because the instant action arises under the MPLA, competency requirements for Dr. Lecky must be determined by the MPLA. See Myers v. Reason, No. 5:05CV134, 2007 WL 704510, at *1 (N.D. W. Va. Feb. 12, 2007). The version of the MPLA in place at the time of the alleged injury provides the following criteria that a plaintiff must establish for a court to find his expert

3

witness to be competent to testify:

> (a) The applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. A proposed expert witness may only be found competent to testify if the foundation for his or her testimony is first laid establishing that: (1) The opinion is actually held by the expert witness; (2) the opinion can be testified to with reasonable medical probability; (3) the expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (4) the expert witness maintains a current license to practice medicine with the appropriate licensing authority of any state of the United States: *Provided*, That the expert witness' license has not been revoked or suspended in the past year in any state; and (5) the expert witness is engaged or qualified in a medical field in which the practitioner has experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient. **If the witness meets all of these qualifications and devoted, at the time of the medical injury, sixty percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university, there shall be a rebuttable presumption that the witness is qualified as an expert.** The parties shall have the opportunity to impeach any witness's qualifications as an expert. Financial records of an expert witness are not discoverable or relevant to prove the amount of time the expert witness spends in active practice or teaching in his or her medical field unless good cause can be shown to the court.
>
> (b) Nothing contained in this section limits a trial court's discretion to determine the competency or lack of competency or a witness on a ground not specifically enumerated in this section.

W. Va. Code § 55-7B-7, amended by 2015 W. Va. Laws S.B. 6 (emphasis added).

Defendant argues that Dr. Lecky is not competent to testify because he cannot meet the condition set forth in the language in bold. Plaintiff asserts that Defendant has misinterpreted the statutory provision set forth above. The undersigned agrees with Plaintiff, and notes that United States District Judge Frederick P. Stamp, Jr. previously rejected an argument similar to Defendant's:

> The defendant overstates the breadth of quoted passage. The statute does not bar an expert from testifying if he or she does not devote sixty percent or more of his or her time to the identified activities. Instead, the statute provides that if an expert does devote the requisite sixty percent of his or her time to the identified activities, a

4

rebuttable presumption will arise that the expert is qualified. Thus, if Dr. David did not meet the sixty percent requirement, he would not automatically be deemed incompetent to testify to the standard of care. Rather, the plaintiffs would simply be deprived of the benefit of a rebuttable presumption that Dr. David is qualified as an expert.

Myers, 2007 WL 704510, at *2. Judge Stamp's reasoning squarely applies here. The fact that Dr. Lecky does not meet the sixty percent requirement (and Plaintiff does not contest this) does not mean that the Court should automatically deem him incompetent to testify to the standard of care. Rather, Plaintiff simply cannot rely on the rebuttable presumption that Dr. Lecky is qualified as an expert. Furthermore, Defendant has presented no evidence that Dr. Lecky does not meet any of the five (5) criteria set forth in § 55-7B-7. Accordingly, the undersigned finds that Dr. Lecky is competent to testify, and recommends that Defendant's argument regarding Dr. Lecky's competency be denied.

**B.    Qualification of Dr. Lecky**

Defendant argues in the alternative that if Dr. Lecky is found competent to testify under the MPLA, his testimony should still be excluded pursuant to Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (Docket No. 16 at 10.) Specifically, Defendant asserts:

> Opinions from Dr. Lecky regarding the standard of care applicable to an emergency surgical situation in September 2013 and any deviation therefrom would, by necessity, be based upon speculation and conjecture due to his lack of clinical and teaching in the field of anesthesiology over the prior seven (7) and a half years, and his lack of practice in an emergency hospital setting for over ten (10) years.

(Id. at 11.)

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, expertise, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier

5

of fact to understand the evidence or to determine fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Furthermore, in Daubert, the Supreme Court held that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597 (alteration in original). In doing so, the trial court must consider

> certain factors such as whether the theory or technique can be tested, whether it has been subject to peer review and publication, the rate of error of any such theory or technique, the extent to which controlling standards provide support, and whether the theory or technique has been widely accepted or rejected in the relevant scientific community.

Myers, 2007 WL 704510, at *3 (citing Daubert).

As noted above, Defendant argues that Dr. Lecky is not qualified to testify as an expert witness because the "period of time between [his] last date of clinical practice, teaching, or research regarding similar conditions and the treatment of Ms. Sine simply is too great." (Docket No. 16 at 11.) However, the undersigned again finds Judge Stamp's reasoning in Myers to be persuasive:

> The role of Daubert, however, is to provide district courts with discretion to close the courtroom door to "junk science." See United States v. Crisp, 324 F.3d 261, 268 (4th Cir. 2003). The reliability prong of the Daubert inquiry goes to the reliability of the science upon which an expert relies, rather than the reliability of the expert. See Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co., 85 F. App'x 964, 967 (4th Cir. 2004) (stating that the reliability inquiry under Daubert must focus on the "principles and methodology" employed by the expert). The defendant has failed to present any evidence that the science upon which Dr. David is planning to testify is unreliable "junk science." Rather, the defendant's qualms with Dr. David's testimony are of the kind that can be remedied by traditional trial tactics such as "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 595. Consequently, this Court finds that Rule 702 and the Daubert line of cases do not bar Dr. David from providing expert testimony in this case.

Myers, 2007 WL 704510, at *3.

Like in Myers, Defendant here has failed to present the Court with any evidence that the science upon which Dr. Lecky intends to testify is unreliable "junk science." Furthermore, Defendant will have the opportunity to remedy his disagreements with Dr. Lecky's testimony through trial tactics such as cross-examination and presentation of evidence. Accordingly, the undersigned finds that Rule 702 and Daubert do not bar Dr. Lecky from providing expert testimony, and recommends that Defendant's argument regarding Dr. Lecky's qualifications as an expert witness be denied.

C. **Evaluation of Dr. Lecky's Testimony Under Rule 403**

Finally, Defendant argues that "Dr. Lecky has been disclosed to offer speculation and conjecture under the guise of an expert opinion, which neither is helpful nor the product of reliable evidence." (Docket No. 16 at 12.) He further asserts that Dr. Lecky should be excluded pursuant to Rule 403 of the Federal Rules of Evidence because his testimony "has presented a high likelihood of misleading the jury as to the nature and extent of Dr. Lecky's timely experience, review, investigation, and evaluation of the issues presented in this case." (Id.)

> Rule 403 states as follows:
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Defendant argues that Dr. Lecky's lack of active practice and activity mandates a finding that his testimony is based upon speculation and conjecture. The undersigned cannot agree at this time, and finds that there is insufficient evidence before the Court at this point to make such a finding. Accordingly, the undersigned recommends that Defendant's Rule 403 argument be denied without

prejudice to Defendant's right to raise it at a later time.

## IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's "Motion to Exclude Testimony of John H. Lecky, M.D." (Docket No. 16) be **DENIED** with respect to his claims that Dr. Lecky is neither competent under the MPLA nor qualified pursuant to Rule 702 and Daubert. The undersigned further **RECOMMENDS** that Defendant's claim that Dr. Lecky's testimony should be excluded pursuant to Rule 403 be **DENIED WITHOUT PREJUDICE** to Defendant's right to raise such claim at a later time.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record.

DATED: April 3, 2015

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE